**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,                                    Case No. 25-cr-225 (PJS/DJF)

        Plaintiff,

v.                                                                          **REPORT AND**
                                                                              **RECOMMENDATION**
Kashmir Khaliffa McReynolds (1),

        Defendant.

This matter is before the Court on Defendant Kashmir Khaliffa McReynolds' Motion to Dismiss Counts 2 and 3 of the Indictment (ECF No. 45) ("Motion").  The Motion seeks to dismiss all charges against Mr. McReynolds on the grounds that: (1.) the Indictment fails to state the offenses charged; and (2.) the applicable statutes violate the Second Amendment of the United States Constitution as applied to Mr. McReynolds.  (*Id.* at 1; ECF No. 70 at 1.)  The Court heard the parties' oral arguments on the Motion on November 5, 2025.  (ECF No. 64.)  Based on the parties' written submissions and the arguments of counsel, the Court recommends Mr. McReynolds' Motion be granted in part and denied in part.

**BACKGROUND**

Mr. McReynolds "worked as armed security for 21 Days of Peace", "a community-violence-intervention initiative of Salem Inc., which is a non-profit based in north Minneapolis."  (ECF No. 1 at 1-2.)  On the night of March 10, 2025, Mr. McReynolds and Defendant Alvin Anthony Watkins Jr., another Salem Inc. employee, helped 21 Days of Peace host a community barbecue in North Minneapolis.  (*Id.* at 3.)  At around 9:30 p.m., an unknown person or persons began firing a hail of bullets in Mr. McReynolds' and Mr. Watkins' direction at the barbecue.  (*Id.* at 1, 3.)  Mr. McReynolds was shot in the neck and torso.  (*Id.* at 3.)  After being shot, he lay on the ground and

began to fire back with a pistol he had in his possession. (ECF No. 1 at 3.) Mr. Watkins initially ran away but then ran back. (*Id.*) Mr. McReynolds directed Mr. Watkins to "grab my chop, grab my chop," a reference to another one of his firearms. (*Id.* at 4.) When Mr. Watkins asked where it was, Mr. McReynolds responded, "It's in my backseat, grab my chop, load that bitch, load that bitch." (*Id.*) Mr. Watkins retrieved the firearm, and both men fired their weapons toward the area from where they believed the shots originated. (*Id.* at 4-5.) Afterwards, they then got in their cars and fled the scene. (*Id.*)

On June 5, 2025, a federal grand jury indicted Mr. McReynolds and Mr. Watkins for various criminal offenses. Count 2 of the Indictment charges Mr. McReynolds with disposing a firearm to a convicted felon in violation of 18 U.S.C. § 922(d)(1). (*Id.* at 6-7.) Count 3 charges Mr. McReynolds with possessing a firearm while employed for a felon in violation of 18 U.S.C. §922(h). (*Id.* at 7.) The charges are premised on Mr. McReynolds' alleged disposal of a firearm to Mr. Watkins, and his professional relationship with Mr. Watkins, who has a felony record. (*Id.*)[1]

## DISCUSSION

### I. Failure to State an Offense

#### A. Standard of Review

When determining whether an indictment fails to state the offense charged, a court must "accept the allegations stated in the indictment as true ... and ask whether they can form the basis of the charged offense." *United States v. Hansmeier*, 988 F.3d 428, 436 (8th Cir. 2021). For an indictment to adequately state an offense, it must "contain[] all of the essential elements of the offense charged." *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2008) (citation modified). "An indictment is normally sufficient if its language tracks the statutory language." *Id.*; *see also*

---

[1] Count 1 of the Indictment applies solely to Mr. Watkins and charges him with being a felon

*Hamling v. United States*, 418 U.S. 87, 117 (1974).  For an indictment to be insufficient, it must be "so defective that it cannot be said, by any reasonable construction, to charge the [alleged] offense."  *Sewell*, 513 F.3d at 821 (citation modified).

### B.      Analysis

#### 1.      18 U.S.C. § 922(d)(1)

The Court concludes that Count 2 of the Indictment adequately charges Mr. McReynolds with violating 18 U.S.C. § 922(d)(1).  Section 922(d)(1) states: "It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile … has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."  The parties dispute whether Mr. McReynolds "disposed of" his firearm to Mr. Watkins within the meaning of the statute.  The Eighth Circuit has interpreted the statute's "otherwise dispose of" phrase to include the moment "a recipient comes into possession … of a firearm."  *United States v. Stegmeier*, 701 F.3d 574, 579-80 (8th Cir. 2012); *see also United States v. Monteleone*, 77 F.3d 1086, 1092 (8th Cir. 1996) (citing *Huddleston v. United States*, 415 U.S. 814, 823 (1974)) (affirming trial court's jury instruction defining phrase to mean "to transfer a firearm so that the transferee acquires possession of the firearm").

The Indictment states that Mr. McReynolds "knowingly transferred a firearm … to [Mr. Watkins], knowing and having reasonable cause to believe that [Mr. Watkins] had previously been convicted of a crime punishable by imprisonment for a term exceeding one year."  (ECF No. 1 at 7.)  The Indictment supports this charge with the allegation that Mr. McReynolds told Mr. Watkins the firearm in Mr. McReynolds' car was "in the backseat" and directed Mr. Watkins to "grab my chop,

---

in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

load that bitch, load that bitch." (ECF No. 1 at 4.)  Assuming these allegations are true, as the Court must, Mr. McReynolds plainly violated the statute when he instructed Mr. Watkins, a person he knew to be a felon, to take possession of his firearm and load it.

Mr. McReynolds resists this conclusion based on an overly narrow reading of applicable precedents.  (ECF No. 70 at 9-11, distinguishing *Stegmeier*, 701 F.3d 574, and *United States v. Jefferson*, 334 F.3d 670 (7th Cir. 2003).)  He argues the relevant case law did not contemplate noncommercial transfers as brief as the one alleged here, and therefore, the appellate courts' interpretations are inapposite.  The Court is unpersuaded for several reasons.

First, there is nothing in those decisions to suggest the Eighth Circuit intended to adopt a temporal requirement in its interpretation of Section 922(d)(1).  The defendant in *Stegmeier* loaned his RV to a convicted felon and told him there was a handgun in the closet.  *Stegmeier*, 701 F.3d at 577.  Mr. McReynolds correctly notes that the felon at issue in that case resided in the RV, and thus had control over the handgun, for a period of months.  (*See* ECF No. 70 at 10.)  But though the court noted the length of the felon's residence in passing in concluding the case presented no "host liability"[2] issue, nothing in that decision suggests the Eighth Circuit intended to generally exclude brief transfers from its interpretation of the statute's scope.  *See Stegmeier*, 701 F.3d at 580 ("'Host liability' is not raised by the facts of this case.  Stegmeier did not violate the statute by merely inviting [the felon] into his home.  Rather, he gave [the felon] control of the RV for approximately three months and specifically disclosed the location of the firearm.").

Mr. McReynolds also cites the Seventh Circuit's decision in *Jefferson*, 334 F.3d 670, in which the court grappled with whether a firearm transfer had to be both commercial and final to

---

[2] "Host liability" occurs if a defendant is deemed guilty of providing a firearm to a prohibited person simply by inviting him into a home where there is a gun.  *Stegmeier*, 701 F.3d at 580 (suggesting in *dicta* that host liability would implicate potential Second Amendment concerns).

satisfy the statute.  The court ultimately held that neither a commercial exchange nor finality is required.  (*Id*. at 675, "To exclude … gratuitous, temporary transfers from the reach of § 922(d) … ill-serves the purposes of the statute.")  In affirming the defendant's conviction, the court cited to the "substantial duration of [the defendant's] transfer [of the firearm to a felon,] his brother[,] and his brother's undisputed exclusive control over the firearm."  Though the duration of the transfer was one factor the *Jefferson* court considered, it did not reach the conclusion Mr. McReynolds urges upon the Court here:  that a brief and temporary transfer of possession can never constitute "disposal" of a firearm within the meaning of the statute.

Second, as a matter of statutory interpretation, there is no temporal requirement, or even a suggestion of one, in the plain language of the statute.  *See Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face."); *Ace Elec. Contractors, Inc. v. Int'l Broth. Of Elec. Workers, Local Union No. 292, A.F.L.-C.I.O.*, 414 F.3d 896, 902 (8th Cir. 2005) ("We will not infer limitation on the plain language of the statute absent some indication that the legislature intended such a result.").  The Court declines Mr. McReynolds' invitation to read an element into the statute that is not stated in its text.

Third, narrowing the scope of the statute would run contrary to Congress' intent.  In interpreting earlier versions of Section 922(d)(1), the Supreme Court concluded that Congress wanted to provide "maximum coverage" and limit the transfer of firearms to prohibited persons as much as possible.  *Huddleston*, 415 U.S. at 825-26.  Following that decision, Congress has expanded the statute to proscribe even more kinds of transfers.  *See Jefferson*, 334 F.3d at 674-75 (reciting legislative history).  These amendments are consistent with the Supreme Court's assertion that Congress' intended to provide "maximum coverage" and further undermine Mr. McReynolds' argument that Congress meant for its broad criminal statute to be subject to an implied and

amorphous temporal limit.  Moreover, to inject such a limit into the statute would predictably lead to absurdities: A person could avoid liability in loaning his gun to a known felon with express criminal intent so long as the felon only held it long enough to fire it.  Particularly when, as in this case, the defendant knowingly directed a felon to load his gun with the apparent intent that the felon use it, the *duration* of the felon's possessory interest lacks meaningful relevance.

Finally, imposing a temporal requirement would be judicially imprudent and exceed the power of this Court.  In the absence of clear congressional guidance, the Court would be forced to engage in arbitrary line-drawing to define when possession has lasted long enough to fall within the statutory prohibition.  Mr. McReynolds offers no legal principle from the text of the statute or legislative history that could provide any basis for defining such a temporal requirement.  In effect, Mr. McReynolds invites the Court to rely on its own judgment in deciding when a firearm has been transferred long enough for the transfer to be deserving of punishment.  The Court declines to engage in policymaking that is beyond its authority and ought to be left to elected representatives. *See United States v. Davis*, 588 U.S. 445, 451 (2019) ("Only the people's elected representatives in the legislature are authorized to 'make an act a crime.'") (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)).  For these reasons, the Court concludes Count 2 of the Indictment adequately states an offense under 18 U.S.C. § 922(d)(1).

### 2.    18 U.S.C. § 922(h)

In contrast, the Court concludes Count 3 of the Indictment fails to adequately state an offense under 18 U.S.C. § 922(h).  Section 922(h) provides that it is unlawful for a person, with knowledge, "while being employed for" a felon and "in the course of such employment," to possess a firearm affecting interstate commerce.  The parties dispute whether the Indictment alleges Mr. McReynolds was "employed for" a felon as the statute requires.

Count 3 parrots the statutory elements, alleging that: (1.) Mr. McReynolds, "while being employed for" Mr. Watkins; (2.) who to Mr. McReynolds' knowledge was a felon; (3.) "in the course of such employment" knowingly possessed a firearm; (4.) affecting interstate commerce. (ECF No. 1 at 7.)  But the Indictment also alleges that: nonprofit organization Salem, Inc. operates 21 Days of Peace, which is funded by the Minnesota Legislature (*id.* at 1-2); Mr. McReynolds was paid by Salem, Inc. to work "as armed security for the 21 Days of Peace violence interrupters" (*id.* at 2); and "[i]n his role as armed security, [Mr.] McReynolds carried firearms to protect the violence interrupters" (*id* .).  The Indictment further alleges, in relevant part, that Mr. McReynolds "knew that [Mr.] Watkins and other 21 Days of Peace violence interrupters were legally prohibited from carrying and possessing firearms due to prior felony convictions" (*id.* at 2-3).

Mr. McReynolds argues Count 3 fails to state an offense because the Indictment expressly states that he worked for 21 Days of Peace, not Mr. Watkins.  (ECF No. 45 at 8.)  The government contends the Indictment is adequate because: (1.) its recitation of the elements is sufficient (ECF No. 53 at 11); and (2.) the "employed for" phrase in the statute only requires the government to prove Mr. McReynolds possessed a firearm "in the service of" Mr. Watkins, not that Mr. Watkins was Mr. McReynolds' employer.  (ECF No. 76 at 24, quoting *United States v. Weaver*, 659 F.3d 353, 357 (4th Cir. 2011); ECF No. 76 at 24-27; ECF No. 64 at 112.)  The Court rejects both the government's contentions.

#### i.      Recital of the Elements

The Indictment faithfully recites the elements of the offense when it accuses Mr. McReynolds of violating Section 922(h) in Count 3.  (*See* ECF No. 1 at 7.)  But though "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself," *Hamling*, 418 U.S. at 117, this general rule of thumb has limitations.  In construing an indictment, a

court must take *all* its allegations into account, and when an allegation necessary to support an element of the charge conflicts with other allegations in an indictment, the indictment may fail despite its recitation of the elements. *See United States v. Perkins*, 748 F.2d 1519, 1524 (11th Cir. 1984) ("The validity of an indictment is determined from reading the indictment as a whole and by practical, not technical considerations.") (quoting *United States v. Markham*, 537 F.2d 187, 192 (5th Cir. 1976) (citation modified)).

In *United States v. Vesaas*, the Eighth Circuit concluded the indictment failed to properly state the charged offense of making false statements under oath, even though the indictment recited the statutory elements. 586 F.2d 101, 103-04 (8th Cir. 1978). The court based its conclusion on finding the indictment itself alleged facts demonstrating the defendant's statements could not have been false. *Id.* The court thus confirmed that an indictment can fail to state an offense despite reciting the elements of the offense when its own allegations demonstrate that, as a legal matter, the defendant could not have committed the offense charged.

Here, the Indictment states that Mr. McReynolds worked for 21 Days of Peace, an initiative funded by the Minnesota Legislature. (ECF No. 1 at 1-2.) It further unequivocally states that 21 Days of Peace was an initiative of the nonprofit Salem, Inc., which paid Mr. McReynolds for his work. (ECF No. 1 at 2.) Nowhere does the Indictment state that either 21 Days of Peace or Salem, Inc. was managed, operated, directed or controlled by a felon. Nor does the Indictment claim that Mr. Watkins was Mr. McReynolds' employer or suggest that 21 Days of Peace was an alter ego of Mr. Watkins. Indeed, at oral argument the government disclaimed that Mr. McReynolds was Mr. Watkins' employee. (ECF No. 64 at 112.) The Indictment is further devoid of any suggestion that Mr. Watkins in any way supervised, directed, led, or otherwise controlled Mr. McReynolds in his work. It follows that the Indictment fails to state an offense, notwithstanding its bare recital of the

elements, if Section 922(h) requires the felon and the accused to have an employer-employee relationship or any relationship at all involving at least some element of control by the felon over the conduct of the accused.

### ii.     The Meaning of "Employed For"

The sufficiency of the Indictment therefore turns on interpretation of the statutory phrase "employed for".  When interpreting a statute, the Court begins with the text itself.  *See United States v. Alvarez-Sanchez*, 511 U.S. 350, 356 (1994); *United States v. S.A.*, 129 F.3d 995, 998 (8th Cir. 1997).  *Black's Law Dictionary* defines "to employ" as: (1.) "To make use of"; (2.) "To hire"; (3.) "To use as an agent or substitute in transacting business"; (4.) "To commission and entrust with the performance of certain acts or functions or with the management of one's affairs."  *Black's Law Dictionary* (12th ed. 2024).  These definitions align with the Court's own understanding that employing someone involves directing the person to perform some task or function.  Therefore, "to be employed for a person" is to be under that person's management, direction or control for a particular task or function.

The government argues that the statute should be read more broadly, to include scenarios when the accused possesses a firearm for a felon's benefit, even when the felon has no control over how the accused uses it.  (ECF No. 76 at 24.)  The government principally relies on two cases for this proposition: *Weaver*, 659 F.3d 353; and *United States v. Lahey*, 967 F. Supp. 2d 731 (S.D.N.Y. 2013).  These cases are inapposite, however.

The defendants in *Weaver* were alleged members of a motorcycle gang who were ordered by its vice president, a felon, to carry firearms to protect him.  659 F.3d at 355.  In upholding the indictment, the Fourth Circuit stressed that the charges "stemmed from orders" the defendants received from the vice president, and that "[b]y virtue of his position in the [gang's] hierarchy, [the

vice president] was able to issue orders to lower-ranking [gang] members." *Id*. In this context, the court rejected a lower court's ruling that the "employed for" element of Section 922(h) implicitly imposed a requirement that the accused receive monetary compensation from the felon. 659 F.3d 353, 358. The court rested its conclusion in part on the grounds that: (1.) a monetary compensation requirement would frustrate Congress' purpose in attempting to prevent "convicted-felon gang *leaders*" from ordering their "*subordinates*" to carry firearms on their behalf, *id.* at 357 (emphasis added); and (2.) employment relationships can exist in the absence of monetary compensation, *id.* at 357-358. Both grounds assume that at least an informal employer-employee or leader-subordinate relationship must exist for the statute to apply, as appeared to be the case in *Weaver*. Here, in contrast, there is nothing to suggest that Mr. McReynolds was employed by Mr. Watkins, following Mr. Watkins' orders, or otherwise in any way subordinate to Mr. Watkins.

*Lahey* involved circumstances very similar to those in *Weaver*. 967 F. Supp. 2d at 735-37. The *Lahey* defendants were members of a motorcycle gang who were ordered by felon gang leaders to serve as armed security to facilitate its criminal activities. *Id*. Quoting *Weaver*, the court rejected the defendants' contention that a showing of compensation was necessary to satisfy Section 922(h) but confirmed that a leader-subordinate relationship still must exist. *Id*. at 41 ("[C]onstruing the statute in the manner suggested by the Moving Defendants would allow 'gang leaders to exploit the loophole that § 922(h) aimed to close by *exerting control over their underlings* without paying them.'") (emphasis added). These cases do not support the government's broad application of the statute to a person such as Mr. McReynolds, who carried a weapon under the direction of a perfectly legal enterprise (indeed, one funded with public support). Rather, they underscore that to be "employed for" a felon, the defendant must be directed or controlled by the felon himself.

The legislative history also supports the Court's reading of the statute.[3]  Congress passed the original version of Section 922(h) as part of the Gun Control Act of 1968, Pub. L. No. 90-351, § 1201, 82 Stat. 236-237 (1968).  It provided that any person who knowingly possessed a firearm affecting commerce "while being employed by" a felon committed a felony offense.  *Id.*  The "employed by" phrase strongly indicated that the accused must be the employee of the felon.

Though the phrase was later changed to the "employed for" language contained in the current version of Section 922(h), the legislative history behind that alteration makes it clear that this change was not intended to have any significant impact on how the statute ought to be understood.  In 1986, Congress passed the Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986), which amended the Gun Control Act of 1968.  During the legislative process, Representative McCollum of Florida noted that the Firearms Owner's Protection Act had inadvertently omitted the existing prohibition on persons possessing firearms while employed for a felon.  *See* 132 Cong. Rec. H1689-03 (statement of Rep. McCollum).  Upon noting the error, Representative McCollum proposed adding the prohibition back into the Act with the language now found in Section 922(h). *Id.*  After he presented this technical amendment, a colloquy between Representative Volkmer of Missouri, the Act's sponsor, and Representative McCollum ensued:

| | |
|---|---|
| Rep. Volkmer: | The purpose of this language is to make it a crime *for the employee of a felon* to ship, transport, or possess a firearm in the course of his employment. Is this correct? |
| Rep. McCollum: | That is how I read this provision and the current law. It is my intent by offering this amendment *to maintain existing law*. |

*Id.* (emphasis added).  The amendment was approved shortly thereafter, and the statute now contains Representative McCollum's amended language.  *Id.*  As this colloquy makes plain, Section 922(h) is

---

[3] When the text of a statute is plain and unambiguous, the Court does not need to "look to legislative history as a guide to its meaning." *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n.29 (1978).  The Court nonetheless does so here because legislative history bolsters what is obvious from the text.

intended to apply when a person is the employee of a felon and possesses a firearm in the course of that employment.  It is not, as the government urges, intended to apply simply because a felon derives some protective benefit from the accused possessing a firearm as part of his employment for someone other than the felon.

Not only is the government's interpretation inconsistent with the text and legislative history of Section 922(h), but it would lead to absurd results.  "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."  *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).  If the Court adopted the government's interpretation of Section 922(h), then private security officers protecting large corporate campuses would face criminal liability risk upon learning that any single employee has a felony conviction.  United States Marshals and other federal law enforcement officials would also violate the statute whenever they transported or guarded a group of felons in protective custody.  These kinds of outcomes are absurd and plainly not within the intent of Congress.

The government denies that such absurd results would arise from its interpretation because Mr. McReynolds was specifically charged with protecting "a small group of felons."  (ECF No. 76 at 27.)  But this does not distinguish Mr. McReynolds from the U.S. Marshals in the Court's hypothetical.  More importantly, the government offers no basis in the text of the statute for a numerical limitation on the number of felons a person may protect without violating the law.  *See Bates*, 522 U.S. at 29. ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face.").  The Court is therefore unpersuaded.

Finally, the government's far-reaching interpretation would raise serious constitutional questions concerning the statute as applied to Mr. McReynolds.  "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, [courts] will construe the

statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988).

The Second Amendment states: "A well regulated Milita, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022), the Supreme Court fundamentally altered how courts assess whether a statute violates the Second Amendment. The Court prescribed a new, two-pronged test that asks first whether the Second Amendment's "plain text" covers the conduct the statute regulates, and if so, whether the government can "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.*

The government concedes, as it must, that Section 922(h) regulates conduct covered by the Second Amendment's plain text (*see* ECF No. 64 at 113), but it argues the Eighth Circuit's decision in *United States v. Jackson*, 110 F.4th 1120 (8th Cir. 2024), identified a historical tradition supporting its interpretation of Section 922(h). (ECF No. 76 at 32; ECF No. 64 at 114.) In *Jackson*, the court upheld the federal felon-in-possession statute, 18 U.S.C. § 922(g), because it concluded that statute was consistent with the Nation's historical tradition of disqualifying categories of "persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness" from possessing firearms. *Id.* at 1129. The government argues Section 922(h) is a natural extension of the same tradition because it prevents a felon from *constructively* possessing a firearm through another person. (ECF No. 76 at 32; ECF No. 64 at 114.)

If the government had drawn its interpretation of Section 922(h) so narrowly, the Court might be persuaded. But in order to subject Mr. McReynolds to criminal liability, the government advances an interpretation that extends much further than constructive possession. "Constructive

possession is established when a person, though lacking physical custody, still has the *power and intent to exercise control* over the object." *Henderson v. United States*, 575 U.S. 622, 626 (2015) (emphasis added). In contrast, the government's interpretation of Section 922(h) would call for the disarmament of otherwise law-abiding, responsible citizens who: (1.) use firearms to provide physical security for felons for legitimate purposes; and (2.) are not under any felon's employment or control. In other words, its interpretation would apply when the felon neither actually nor constructively possesses a firearm. The statute does not require that the accused himself be deviant or dangerous. Thus, in the absence of constructive possession by a felon, Section 922(h) cannot withstand Second Amendment scrutiny based on the tradition of disarming deviants and dangerous people. *See United States v. Rahimi*, 602 U.S. 680, 692 (2024) ("Even when a law regulates arms-bearing for a permissible reason …, it may not be compatible with the right [to bear arms] if it does so to an extent beyond what was done at the founding.").

The government identifies no other historical basis to conclude that law-abiding citizens during the founding era were prohibited from using firearms to protect felons. Therefore, if the Court adopted the government's interpretation of the statute, it would be inclined to find the law unconstitutional as applied to Mr. McReynolds because "the Second Amendment's plain text covers" the conduct regulated by Section 922(h) and the government has failed to rebut the presumption that the Constitution "protects that conduct." *Bruen*, 597 U.S. at 24. The Court's narrower construction of the statute avoids this constitutional predicament and is consistent with Congress' evident intent. The Court accordingly declines to adopt the government's interpretation of the statue. *See Edward J. DeBartolo Corp.*, 485 U.S. at 575.

For all the above-stated reasons, the Court concludes that Section 922(h) liability requires that the accused be an employee or subordinate acting under a felon's direction or control. The

Indictment explicitly states that Mr. McReynolds was an employee of 21 Days of Peace and possessed a firearm as part of his employment for 21 Days of Peace, and it further fails to allege that he otherwise worked or carried a gun under a felon's direction or control. The Indictment therefore fails to state a violation of Section 922(h) because no "reasonable construction" of it could be understood to state the elements of the offense. *Sewell*, 513 F.3d at 821. Thus, the Court recommends that Count 3 of the Indictment be dismissed.

## II.    Second Amendment

Mr. McReynolds argues that both charges against him violate the Second Amendment as applied to his conduct. (ECF No. 45 at 2-5; ECF No. 70 at 2-3.) Because the Court recommends that Count 3 of the Indictment be dismissed for failure to state an offense, it declines to address Mr. McReynolds' as-applied challenge to that charge. As to Count 2, the Court recommends Mr. McReynolds' Motion be denied without prejudice because the Court cannot resolve the issue at the pretrial stage.

Rule 12 of the Federal Rules of Criminal Procedure allows a court to dismiss an indictment before trial when the court can resolve the issues presented "without a trial on the merits." "In considering a motion to dismiss, a district court may not make factual findings when an issue is inevitably bound up with evidence about the alleged offense itself." *United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025) (citation modified). Mr. McReynolds argues no trial on the merits is required because "the *only* reasonable interpretation of Mr. McReynolds's words and actions" alleged in the Indictment is that he was acting in self-defense, which is a fundamental right that the Second Amendment aims to secure. (ECF No. 70 at 3, 5-6; *see also* ECF No. 81 at 7, "[T]he government must justify this prosecution by identifying a consistent historical tradition of criminalizing a non-felon's emergency request for assistance that results in a prohibited person's

momentary handling in the midst of self-defense.")  The Court disagrees.  Though Mr. McReynolds's actions, as alleged in the Indictment, might reflect that he was acting in self-defense and was therefore justified in disposing of his firearm to Mr. Watkins, that is not the only reasonable inference to be drawn from the facts alleged.

Another possibility is that Mr. McReynolds unreasonably overreacted in firing back and directing Mr. Watkins to retrieve the firearm and join him.  "If a person acts in self-defense [he] is not guilty of the charged offenses." *United States v. Earth*, 984 F.3d 1289, 1299 (8th Cir. 2021).  A person acts in self-defense if he "reasonably believes" his actions are "necessary to protect [himself] from what [he] reasonably believes to be unlawful physical harm about to be inflicted by another." *Id.*  But "after the danger has ceased to exist," his actions "cannot be justified on the basis of reasonable belief." *United States v. Thomas*, 946 F.2d 73, 77 (8th Cir. 1991); *see also United States v. Bordeaux*, 570 F.3d 1041 1048 (8th Cir. 2009) (quoting *Thomas*).  The Indictment alleges an unknown individual or individuals fired an "initial hail of gunfire," and then never fired again.  (ECF No. 1 at 5.)  It also alleges Mr. McReynolds and Mr. Watkins "recklessly fired approximately 43 bullets in the dark, at no one in particular."  (*Id.* at 1.)  The Indictment is silent as to the passage of time between the initial gunfire and Mr. McReynolds' response, but depending on the trial evidence, a jury might find that at least some of his actions, including the transfer of his firearm to Mr. Watkins, occurred "after the danger ha[d] ceased to exist." *Thomas*, 946 F.2d at 77.  Under that interpretation of the facts, Mr. McReynolds' actions would not have been justified under a theory of self-defense.  *See United States v. El-Alamin*, 574 F.3d 915, 926 (8th Cir. 2009) (affirming lower court's refusal to allow defendant to present justification defense to felon-in-possession charge because he failed to demonstrate possession of a firearm was necessary); *Bordeaux*, 570 F.3d at 1048 (concluding that even if some actions may have been justified by self-defense, the jury did not

necessarily have to conclude that all actions were so justified).

In the face of competing interpretations of the Indictment's allegations that are central to Mr. McReynolds' constitutional challenge, the Court cannot conclude that a trial on the merits is unnecessary to resolve it.  *See Grubb*, 135 F.4th at 607; *United States v. Bromwich*, No. 3:24-cr-30016 (ECS/MAM), 2024 WL 5395627, at *5-6 (D.S.D. Dec. 20, 2024) (concluding defendant's self-defense claims were better left for trial because "whether a defendant acted in self-defense incorporates questions of fact"), *report and recommendation adopted as modified*, 2025 WL 326387 (D.S.D. Jan. 29, 2025).  The Court cannot resolve Mr. McReynolds' as-applied challenge to Count 2 at this stage because, in the event the jury concludes Mr. McReynolds did not act in self-defense, his Second Amendment self-defense argument necessarily will fail.  *See Grubb*, 135 F.4th at 608 (affirming decision to delay ruling on as-applied constitutional challenge to 18 U.S.C. § 922(g)(3) because court could not "say definitively that trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense").  For this reason, the Court recommends that the Motion with respect to Mr. McReynolds' as-applied challenge to Count 2 of the Indictment be denied without prejudice.

**RECOMMENDATION**

Based on the foregoing, and on all the files, records, and proceedings here, **IT IS HEREBY RECOMMENDED** that Defendant Kashmir Khaliffa McReynolds' Motion to Dismiss Counts 2 and 3 of the Indictment (ECF No. 45) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.  Count 3 of the Indictment (ECF No. 1) be **DISMISSED** for failure to state an offense; and

2.  The Motion be **DENIED WITHOUT PREJUDICE** in all other respects.

Dated: April 10, 2026                          *s/ Dulce J. Foster*
                                               Dulce J. Foster
                                               United States Magistrate Judge

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).