UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                    Case No. 25-CR-0225(1) (PJS/DJF)

Plaintiff,

ORDER

v.

KASHMIR KHALIFFA McREYNOLDS,

Defendant.

---

Matthew D. Forbes, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

R.J. Zayed, Ian Blodger, and Caroline Rogers, DORSEY & WHITNEY LLP, for defendant.

This matter is before the Court on (1) the objection of defendant Kashmir McReynolds to the April 6, 2026, Report & Recommendation ("R&R") of Magistrate Judge Dulce J. Foster recommending that McReynolds's motion to suppress statements be denied, and (2) both parties' objections to Judge Foster's April 10, 2026, R&R recommending that McReynolds's motion to dismiss be denied without prejudice as to Count 2 and granted as to Count 3.

The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). Based on that review, the Court agrees with Judge Foster that McReynolds's motion to suppress should be denied. The Court also agrees that McReynolds's motion to dismiss Count 2 should be denied without prejudice. But the

Court respectfully disagrees with Judge Foster than McReynolds's motion to dismiss Count 3 should be granted.  Accordingly, the Court overrules McReynolds's objections and sustains the government's objection to the recommended dismissal of Count 3.

## I.

With respect to McReynolds's suppression motion:  McReynolds faults Judge Foster for finding that his *Miranda* waiver was knowing, intelligent, and voluntary.  In particular, McReynolds contends that Judge Foster improperly discounted evidence that he was confused and disoriented.  Having reviewed the video of McReynolds's interview, however, the Court agrees with Judge Foster that McReynolds appears coherent and capable of a knowing, intelligent, and voluntary waiver.

McReynolds points to specific instances in which he had trouble recalling information or gave inaccurate answers.  But McReynolds exaggerates the importance of these isolated instances in the context of an approximately 105-minute interview.  During that interview, McReynolds was readily able to recall specific persons, facts, and events, including events in sequence.  In addition, at least some of the instances cited by McReynolds seem to have nothing to do with his mental state.  For example, McReynolds's difficulty remembering his girlfriend's address appears to be attributable to the fact that she had recently moved.  Gov't Ex. 4 at 11:58:18–11:58:32.  In addition, given the ubiquity of smart phones, individuals often cannot recite from memory the

phone numbers of even close friends and family. *See id.* at 1:11:49–1:12:03 (McReynolds stating that he does not know his girlfriend's phone number "by heart" but providing his father's number).

McReynolds claims that he erred when he stated that he worked as armed security for 21 Days of Peace, but the Court is not certain that this statement was, in fact, inaccurate. McReynolds's testimony makes clear that he intentionally carried a firearm while performing his duties and for that reason he was "not allowed" to be around fellow employees with felony records. Gov't Ex. 4 at 12:00:55–12:02:50; 12:04:08–12:04:55.

Finally, McReynolds argues that the officers who questioned him minimized the importance of the *Miranda* warnings as a mere formality. But the officers clearly stated that McReynolds "fired back" and, "*because* of that," the officers needed to give him a *Miranda* warning. Gov't Ex. 4 at 11:55:05–11:55:15. Considering the totality of the circumstances, the Court agrees with Judge Foster that McReynolds's waiver was knowing, intelligent, and voluntary.

II.

With respect to McReynolds's motion to dismiss Count 2, which charges him with disposing of a firearm to a convicted felon in violation of 18 U.S.C. §§ 922(d)(1) and 924(a)(8): McReynolds faults Judge Foster for failing to address his arguments that his

disposal of the firearm was not commercial activity affecting interstate commerce and that he did not take any affirmative step to give his codefendant, Alvin Watkins, a firearm. These arguments appear to be based on a dispute about the statutory meaning of "dispose."

As Judge Foster explained, the Eighth Circuit has defined "dispose" broadly to mean "when a recipient comes into possession, control, or power of disposal of a firearm." *United States v. Stegmeier*, 701 F.3d 574, 579 (8th Cir. 2012) (cleaned up). Making the point even more clearly, the Eighth Circuit went on to say that "a recipient's possession is sufficient proof that a defendant disposed of a firearm." *Id.* at 579–80. Further, *Stegmeier* affirmed a conviction for disposing of a firearm to a felon where the defendant simply allowed the felon to stay in his recreational vehicle and told him that there was a firearm in a closet. *Id.* at 577–78. Here, by contrast, the indictment alleges that McReynolds not only told Watkins exactly where the firearm was, but also directed Watkins to retrieve it and even to load it. *See* Indictment ¶ 3(*l*). Under *Stegmeier*, this is clearly sufficient to allege a violation of § 922(d)(1).

III.

With respect to McReynolds's motion to dismiss Count 3, which charges McReynolds with possession of a firearm while employed for a felon under 18 U.S.C. §§ 922(h) and 924(a)(2): Section 922(h) makes it a crime to receive, possess, or transport

a firearm while knowingly "being employed for" a prohibited person (such as a felon).

Judge Foster interpreted "being employed for" to require either that the felon be the

employer of the person possessing the firearm or that the felon exercise some control or

authority over that person.

The Court respectfully disagrees.  The plain meaning of "employed *for*" includes

situations in which a third party employs a person for—in other words, on behalf

of—another, without the latter exercising any authority or control over the employee.

(For example, "we hired a nanny for our children.")  While this interpretation could

raise constitutional concerns, the Court interprets § 922(h) in this context to require that

the employer (here, 21 Days of Peace) intended to hire the armed guard (here,

McReynolds) to protect a particular prohibited person (here, Watkins) or a small group

including that prohibited person.

For example, if an employer hires an armed guard to protect the residents of a

large housing complex or the patrons of a shopping mall, the Court would not say that

the guard was hired "for" any prohibited persons who happen to live in the complex or

visit the mall.  But if an employer hires an armed guard to protect a particular family

(which includes a prohibited person) in a housing complex or to protect a high-profile

visitor (who is a prohibited person) to a shopping mall, the Court would say that the

employee was hired "for" the prohibited person, even though the prohibited person did

not hire the employee and does not control him.  Of course, such a reading may still leave an opening for McReynolds's as-applied challenge, but that challenge is better resolved after trial.

Finally, McReynolds argues that the facts alleged in the indictment contradict the elements of § 922(h).  Specifically, he points out that, according to the allegations in the indictment, he had already finished his shift for 21 Days of Peace by the time of the shooting.  He also points out that the indictment alleges that 21 Days of Peace prohibits the violence interrupters that it employs from carrying weapons.  Fairly read, however, the indictment indicates that McReynolds also possessed the firearm earlier, during his shift, and further alleges that 21 Days of Peace employed McReynolds as armed security, not as a violence interrupter.  Indictment ¶ 3(f) (alleging that McReynolds "worked as armed security for the 21 Days of Peace violence interrupters" and that "[i]n his role as armed security, McREYNOLDS carried firearms to protect the violence interrupers").  McReynolds disputes these allegations, but that is obviously not a basis to dismiss the charge.  The Court therefore sustains the government's objection and denies McReynolds's motion to dismiss Count 3.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.    The Court OVERRULES defendant's objections [ECF Nos. 92, 95] and SUSTAINS the government's objection [ECF No. 96].

2.    The Court ADOPTS the April 6, 2026, Report and Recommendation [ECF No. 89] and ADOPTS IN PART AND REJECTS IN PART the April 10, 2026, Report and Recommendation [ECF No. 91].

3.    Defendant's motion to suppress statements [ECF No. 42] is DENIED.

4.    Defendant's motion to dismiss [ECF No. 45] is DENIED WITHOUT PREJUDICE.

Dated:  June 3, 2026                                    /s/ Patrick J. Schiltz
                                                        Patrick J. Schiltz, Chief Judge
                                                        United States District Court